# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

JOHN DOUGLAS COX
KASIE NICHOLE COX
a/k/a KASIE NICHOLE MAY

                  Debtors

Case No.  06-31789

## MEMORANDUM ON
## MOTION FOR TURNOVER OF FUNDS

**APPEARANCES:**    LAW OFFICES OF MAYER & NEWTON
        Richard M. Mayer, Esq.
        John P. Newton, Jr., Esq.
        1111 Northshore Drive
        Suite S-570
        Knoxville, Tennessee  37919
        Attorneys for Debtors

        GWENDOLYN M. KERNEY, ESQ.
        Post Office Box 228
        Knoxville, Tennessee  37901-0227
        Chapter 13 Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court upon the Motion for Turnover of Funds (Motion for Turnover) filed by the Debtors on September 26, 2007, asking the court to direct the Chapter 13 Trustee, Gwendolyn M. Kerney (Trustee), to turn over $19,131.47 she holds in proceeds realized from the settlement of litigation in which the Debtor, Kasie Nichole Cox, was the plaintiff. The Trustee filed an Objection By Chapter 13 Trustee to Debtors' Motion for Turnover of Funds (Objection) on October 16, 2007, and the court held a preliminary hearing on October 17, 2007, at which time the parties agreed that the matter should be decided on stipulations and briefs.

Pursuant to the court's October 22, 2007 Order, the parties filed a Joint Stipulation of Facts on October 30, 2007. The court also takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of material undisputed facts of record filed in the Debtors' case file. On November 8, 2007, the Debtor's [sic] Brief in Support of Motion for Turnover of Funds was filed by the Debtors, and on November 16, 2007, the Trustee filed the Brief in Support of Chapter 13 Trustee's Objection to Debtors' Motion for Turnover of Funds.

Pursuant to the Joint Statement of Issues set forth in the parties' Joint Stipulation of Facts, the sole issue is "whether the debtors' sexual harassment settlement funds of $19,131.47 are property of the Chapter 13 estate or property of the debtors."

This is a core proceeding. 28 U.S.C. § 157(b)(2)(O) (2005).

2

**I**

At the time the Debtors filed the Voluntary Petition commencing their bankruptcy case under Chapter 13 on August 14, 2006, a sexual harassment lawsuit was pending in the United States District Court for the Eastern District of Tennessee, Northern Division, styled *Kasie Nicole Cox v. Grayson Pontiac, Inc., d/b/a Grayson BMW*, docket #06-CV-184 (Lawsuit). On October 2, 2006, the Debtors' Chapter 13 Plan (Plan) was confirmed pursuant to an Order Confirming Chapter 13 Plan (Confirmation Order). Under the terms of the Confirmation Order and Plan, "[p]roperty of the estate does not vest in the debtor(s) until completion of the plan[,]" and "[a]ny and all net proceeds from debtor(s) pending sexual harassment lawsuit claim to be paid except for Court approved legal fees and expenses."[1] The court approved the Debtors' application to employ David A. Burkhalter, II, as their attorney in the Lawsuit by an Order entered November 14, 2006. As provided in the application to employ, Mr. Burkhalter was entitled to compensation of 33 1/3% of the total recovery and reimbursement of his expenses.

On July 5, 2007, the Debtors filed a Motion to Approve Compromise and Application to Pay Legal Fees and Expenses (Motion to Compromise), asking the court to approve a settlement of the Lawsuit for $29,500.00, which would result in a net payment to the Chapter 13 Trustee of $19,131.47 after deducting Mr. Burkhalter's attorney's fees of $9,833.33 and expenses of $535.20. The Motion to Compromise expressly recites that "[t]he remaining net settlement balance of $19,131.47 shall be paid to the Chapter 13 Trustee, Gwendolyn Kerney." An Order granting the

---

[1] The Debtors do not dispute that this language required payment of the proceeds from the settlement of the Lawsuit to the Chapter 13 Trustee for distribution in the manner required under the terms of the Plan.

3

Motion to Compromise and approving the settlement was entered on July 27, 2007, directing payment of the amounts owed to Mr. Burkhalter, "with the remaining $19,131.47 submitted to the Chapter 13 Trustee[.]"[2]

Mr. Burkhalter sent a Full and Final Release & Hold Harmless Agreement (Release) executed by the Debtor, Kasie Nichole Cox, to the Chapter 13 Trustee on August 28, 2007. The Trustee executed and returned the Release to Mr. Burkhalter on September 7, 2007. Under the terms of the Release, Mr. Burkhalter was to receive his attorney's fees and expenses totaling $10,368.33, and the remaining $19,131.47 was to be paid to the Trustee. On September 6, 2007, the Debtors filed a Motion to Dismiss Chapter 13, requesting dismissal of their Chapter 13 bankruptcy case which was granted pursuant to an Order Dismissing Chapter 13 Case and Directing Distribution of Funds (Dismissal Order) entered on September 12, 2007.[3] The Dismissal Order directs, *inter alia*, that "the Trustee shall disburse the balance of funds on hand in accordance with the Debtors' confirmed plan. 11 U.S.C. § 1326(c)."

On September 21, 2007, the Trustee received from Mr. Burkhalter, and deposited, check number 35700 dated August 13, 2007, in the amount of $19,131.47. The Debtors filed their Motion for Turnover on September 26, 2007, contending that pursuant to 11 U.S.C. § 349(c) (2005), the settlement proceeds re-vested in the Debtors upon dismissal of their bankruptcy case. In her Objection, the Trustee argues that the re-vesting set forth in § 349 is subject to modification by the

---

[2] Both the Motion to Compromise and July 27, 2007 Order were prepared by Debtors' counsel.

[3] "On request of the debtor at any time . . . the court shall dismiss a case under this chapter." 11 U.S.C. § 1307(b) (2005).

4

court for cause, and that the dismissal of the case did not vacate the Plan provision requiring payment of the settlement proceeds from the Lawsuit to the Trustee for distribution under the terms of the Plan.

## II

At the commencement of the Debtors' case, their bankruptcy estate, including all of the Debtors' property and any interests in property held by the Debtors, was created. *See* 11 U.S.C. § 541(a) (2005). Clearly, included within the Debtors' estate was the unliquidated sexual harassment lawsuit being prosecuted by Kasie Nichole Cox, as well as any proceeds that would stem therefrom. *See Demczyk v. Mutual Life Ins. Co. (In re Graham Square)*, 126 F.3d 823, 831 (6th Cir. 1997); *In re Robinson*, 292 B.R. 599, 606 (Bankr. S.D. Ohio 2003). Pursuant to the Confirmation Order, the Lawsuit remained property of the estate upon confirmation of the Plan. *See* 11 U.S.C. § 1327(b) (2005). As such, when the Order approving the settlement was entered on July 27, 2007, the $29,500.00 settlement proceeds became part of the Debtors' bankruptcy estate, irrespective of the fact that the proceeds had, at that time, not yet been distributed. The Debtor and Plaintiff in the Lawsuit, Kasie Nichole Cox, acknowledged that the settlement proceeds were property of the estate to be distributed under the terms of the Plan through the filing of the July 5, 2007 Motion to Compromise and through her execution of the Release on August 28, 2007. *See* JT. STIP. at ¶¶ 8, 9.

In support of their argument that the Bankruptcy Code "'immediately' vested the sexual harassment proceeds in the Debtor" upon dismissal of their Chapter 13 case, and that they, rather

5

than the Trustee, are entitled to the $19,131.47, the Debtors rely upon 11 U.S.C. § 349, which

provides, in material part:

> (b)  Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> . . . .
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b)(3).  The Debtors' reliance upon § 349(b)(3) is misplaced.

The Plan, confirmed on October 2, 2006, expressly provides for payment of the settlement

proceeds from the Lawsuit to the Trustee in furtherance of the Plan.  Confirmation triggered

application of 11 U.S.C. § 1327(a), which states that "[t]he provisions of a confirmed plan bind the

debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and

whether or not such creditor has objected to, has accepted, or has rejected the plan."  11 U.S.C.

§ 1327(a) (2005).  Prior to confirmation, creditors are given the opportunity to object thereto, *see* 11

U.S.C. § 1324(a) (2005), and "[i]f no objection is timely filed, the court may determine that the plan

has been proposed in good faith and not by any means forbidden by law[.]"  FED. R. BANKR. P.

3015(f).

A confirmed plan is res judicata, and as such, absent a default under the terms of the

confirmed plan, creditors and debtors are precluded from making post-confirmation assertions of any

interest other than those specifically provided for in the plan.  *In re Crowley*, 258 B.R. 587, 591

(Bankr. D. Vt. 2000).  This accomplishes the purpose of § 1327(a) by granting "finality to a

confirmation order so that all parties may rely upon it without concern that actions which they may

6

thereafter take could be upset because of a later change or revocation of the order[,]" *In re Thaxton*, 335 B.R. 372, 374 (Bankr. N.D. Ohio 2005), and following confirmation, during the pendency of a Chapter 13 case, a confirmed plan "is treated as the exclusive and transcendent relationship between the debtor and the creditor[s]." *Salt Creed Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (B.A.P. 6th Cir. 2004).

It is undisputed that the Lawsuit itself was an interest of the Debtors held at the time that they filed their case on August 14, 2006, and that it was, therefore, property of the estate, as were any proceeds stemming from the litigation thereof. The Debtors were required to obtain court approval prior to settling the Lawsuit, and they did so effective July 27, 2007, when the court entered the Order granting their Motion to Compromise and approved the settlement in the amount of $29,500.00. Per the July 27, 2007 Order, the $19,131.47 in proceeds remaining after payment of attorney fees and expenses were to be paid to the Chapter 13 Trustee. As of that date, the court-authorized settlement proceeds were no longer unliquidated or contingent, but constituted a liquidated sum certain, the distribution of which was provided for under the terms of the Debtors' Plan.

Furthermore, the September 12, 2007 Dismissal Order expressly directs that "[t]he trustee shall disburse the balance of funds on hand in accordance with the Debtors' confirmed plan. (11 U.S.C. § 1326(c))." This directive unambiguously satisfies the "[u]nless the court, for cause, orders otherwise" proviso of § 349(b) and thus overrides the provision of § 349(b)(3) re-vesting "property of the estate" in the Debtors upon dismissal of their Chapter 13 case.

7

The court-approved settlement was consummated on August 13, 2007, upon the issuance of check number 35700 payable to the Trustee in the amount of $19,131.47. It is on that date that the Trustee was entitled to payment of the check[4] and thus authorized to use the funds on behalf of the Debtors' estate, making August 13, 2007, the crucial date in terms of whether the proceeds from the settlement were "in her hands" or not. Additionally, as previously noted, the Plaintiff in the Lawsuit and Debtor, Kasie Nichole Cox, executed the August 28, 2007 Release after the check was issued, acknowledging that $19,137.47 of the settlement proceeds would be paid to the Trustee. Finally, the Trustee executed the Release received from Mr. Burkhalter on September 7, 2007, before the Debtors voluntarily dismissed their Chapter 13 case. It is, therefore, of no consequence that Mr. Burkhalter failed to deliver check number 35700 to the Trustee until September 21, 2007, nine days after the Debtors' case had been dismissed. It was completely out of the Trustee's control that, for whatever reason, Mr. Burkhalter chose to hold the August 13, 2007 check until after the Debtors' case was dismissed. The Debtors are not entitled to a $19,137.47 windfall in funds that were property of their bankruptcy estate in which Mrs. Cox clearly released all interest when she executed the Release on August 28, 2007, simply because Mr. Burkhalter delayed in forwarding the check to the Trustee.

---

[4] Under Tennessee law, a check is a negotiable instrument. TENN. CODE ANN. § 47-3-104(c), (f) (2001 & Supp. 2007). The date of an instrument is relevant as follows:

(a) An instrument may be antedated or postdated. The date stated determines the time of payment if the instrument is payable at a fixed period after date. Except as provided in § 47-4-401(c), an instrument payable on demand is not payable before the date of the instrument.

(b) If an instrument is undated, its date is the date of its issue or, in the case of an unissued instrument, the date it first comes into possession of a holder.

TENN. CODE ANN. § 47-3-113 (2001).

8

In summary, the $19,131.47 in settlement proceeds were property of the Debtors' estate from July 27, 2007, the date upon which the court entered its Order approving settlement of the Lawsuit, and they were effectively in the hands of the Trustee as of August 13, 2007, the date upon which check number 35700 payable to the Trustee was issued, irrespective of the date that the Trustee actually received the check. Accordingly, the Trustee is authorized to disburse the $19,131.47 in accordance with the Plan.

An order consistent with this Memorandum will be entered.

FILED:  January 4, 2008

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE
